Case No. 25-1104, Evergreen Shipping Agency of America Corp. and Evergreen Line Joint Service Agreement Petitioners v. Federal Maritime Commission in the United States of America. Mr. McGovern for the Petitioners and Mr. Huey for the Respondents. You may proceed. Thank you, Your Honor. Good morning. May it please the Court, Robert McGovern for the Evergreen Ocean Carrier Petitioners. This case is before this Court for a second time. The first time around, the Court found that the FMC ignored key facts and failed to properly analyze the financial incentive of Evergreen's detention charges. It remanded the case back to the agency to make a circumstantial fact-bound inquiry that both the Shipping Act and the FMC's interpretive rule requires. Following remand, the FMC elected not to conduct any additional fact-finding. After now agreeing that the charges did financially incentivize it —  Pardon me? Did you request additional — to supplement the record? On remand, Your Honor, we didn't request an additional — Why are you faulting the agency for not doing it? We frankly, given the lack of the factual record, had just expected that the agency was going to do additional fact-finding, particularly given the fact that there were questions from the Court about the factual record in Evergreen 1. Well, the last paragraphs of Evergreen 1 lay out specific directions that do not include revisiting the facts. Your Honor, I'm not aware of — There were facts that were in the record. There were findings that the Court suggested were not there. But there was already a record, and you didn't ask for anything more to be done. So there was a record the agency could pluck from and make a new package of findings, which is what I think they tried to do. Your Honor, if the FMC's position is that the substantial evidence in the record supports its conclusions — for example, in its specific incentive analysis, that TCW did everything it could to get the container back, and that there was a plan closure — then it was up to the Commission to supplement its factual record, because simply the facts on both of those two critical issues that it needs to support its conclusion are not there. Those were allegations and part of a sworn complaint. The SCO credited them. There was no rebuttal evidence put in by you. And this was discussed in the appeal of Evergreen 1 and resolved. Never became part of the resulting opinion. Apparently, the Court took that as sufficient explanation. Well, the SCO actually never made any findings of fact on those issues. No, it accepted the allegations. They accepted the conclusory allegations without any supporting facts. Exactly. They didn't challenge them. But importantly, the SCO listed 38 specific facts that it did find in the proceeding below. But none of those facts were listed by the SCO in those 38 facts. There was nothing about a plan closure in the SCO's statement of pertinent facts. And there was — and all that is on the record right now is a conclusory statement from TCW that it did all that it could to — Isn't that unrebutted? It's not unrebutted in two respects, Your Honor. First, Evergreen repeatedly, repeatedly in the case below, told the small claims officer and the FMC that there was no support for TCW's claim that they did everything they could. Evergreen said repeatedly to the SCO and the FMC, TCW is just saying they took all efforts. But they didn't give one single example of a single thing they did. So there wasn't a fact to rebut, Your Honor. You were given the opportunity to get some discovery on this. You didn't take it. The way you rebut something like that is with evidence. You didn't put in any evidence, rebuttal, fake examination. I mean, I — This ship has sailed. Do you have better arguments? They clearly made findings based on what was before them. And you had an opportunity to counter it if you thought there was something to say. Yeah, there is a fight over whether to get the equipment back within a specified time. And they put in what they thought was enough. And the agency bought it, and you didn't rebut it. You kept saying we're not buying it, but that's not evidence. Well, Judge Edwards, I would only — I would only submit — And the FMC made this point, too, saying this was unrebutted claim. The problem here is that there was nothing for ever — One of the efforts that the motor carrier took to retrieve the container in time to return it before the foreclosure is TCW. All Evergreen could do — You could have asked TCW for what support they have for this. Right. And you didn't. We certainly did, Your Honor. Respectfully, we did in the — and I will point to — In JA461, and this is Evergreen's pleadings before the small claims officer, under — at the top on page 11, claimant has made all attempts to work with the BCO and ensure cargo and equipment has moved as fluidly as possible. This is what Evergreen said. Claimant has made no factual showing of precisely what it did to work with the BCOs and to deal with the pandemic. Claimant's terse and conclusory allegations are not evidence and do not satisfy claimant's burden of proof. So — If that's — if we took that as the key, then there would be no evidence on either side. Right? They didn't put anything in, according to you, and you didn't put anything in, as we all know. Again, respectfully, Judge Ginsburg, there isn't anything for Evergreen to put in on what TCW may or may not have done. Evergreen asked. You had the opportunity to seek discovery from them on that, and you didn't take it. That's right. And I think one thing to point out on that is only that the case at that point in time was about whether or not the port was closed, not the plant. This is now back on remand from the court. But I understand the court's position, and I will point out that the FMC has two aspects of its decision, what it refers to as its broad incentive analysis and what it refers to as its specific incentive analysis. And I think what we've been talking about here all relate to the FMC's specific incentive analysis. And, again, Evergreen submits, we don't believe sufficient evidence exists to support the FMC's conclusions. However, in what the FMC calls its broad application of the incentive principle, it found that their clear financial incentives were outweighed by a set of generalized concerns it had on free fluidity. What's worse is that the FMC has flatly conceded that the test that it used, its new test, which has no foundation in the rule, is not based on specific facts as its own interpretive rule requires. Instead, it's based entirely on broad hypotheticals that are unsupported and, in fact, contradicted by the record. First, the FMC hypothesizes that if a container is not returned before port closure, if it is returned before port closure, the port might not be able to turn it around because the port might not be working. But the facts in this case, the facts on the record in this case show that the port of Savannah in May of 2020 was open for business. It was continuing normal 24-7 operations despite the gates being closed to truckers. That's exactly the opposite of the FMC's hypothetical concern in its so-called broad analysis. Excuse me. The gate was closed to truckers? The gate was closed. Why is that the problem? The gate was closed to truckers because TCW was incentivized to return the container before it was closed, and that's what Evergreen 1 was about. And the FMC now agrees that it was so incentivized to return it. What the commission was saying is we understand there is an incentive and, therefore, consistent with the incentive principle, but it made up a new test that said notwithstanding that incentive, we're still concerned about overall freight fluidity. Freight fluidity and the incentive principle mutually exclusive? It's one test, Your Honor. In other words, the test in the interpretive rule is what the commission said when evaluating the reasonableness of a charge. It will evaluate whether or not the charge serves its intended purpose to promote to have a financial incentive to return the equipment properly, which the commission has determined in the years that it references in its brief. All of that, prompt return of equipment, promotes freight fluidity. It's one test. The commission inexplicably turned it into two. How so? What the FMC said is we don't care about the financial incentive anymore. They wrote the financial incentive completely out. It's the critical component of the incentive principle. And in writing the financial incentive out, what the FMC has done is reached another illogical result by saying now we don't care about prompt return to equipment. In fact, they say that explicitly in their brief. They say it's not about prompt and quickest return anymore. It's about overall freight fluidity. So what the FMC's new rule essentially says is slower equipment return. Slower equipment return that exceeds contractually agreed free time somehow promotes freight fluidity. It just doesn't make any sense. And when the FMC hypothesized. The commission also, I think, said that there are incentives apart from the demerge or detention operating on the trucker, correct? In this instance, the trucker actually had rented and had per diem payments on some of this equipment, right? So it had that incentive. It has the incentive to get the equipment used again for a new job. Those are those I should think are universally true. And the FMC made that argument in Evergreen one, too. If that were the case, if that's the only incentive that matter, then we don't need detention charges. Detention charges have existed in this industry for decades. They've existed because all parties agree that those charges provide an important financial incentive to get an empty container back so that the empty. In addition to the other incentives. Right. And the other incentives, though, are not part of the FMC's rule. Again, the FMC is just picking it. It's making it up. But it did say on remand, in the opinion on remand, it did say there are other incentives working on the truckers. And those would be true inherently in every instance to get the equipment used again. Plus the backpack in this instance, this particular one, is rented equipment. And that's fair enough, except then that doesn't permit the FMC to ignore its own rules to say that, you know, it needs to evaluate whether or not there's a financial incentive to return the equipment. Here on remand, the FMC now agrees there was a financial incentive. But the FMC says we don't care about that financial incentive anymore. Now we just care about freight fluidity. In the order on remand, the commission recently explained that it did not draft the incentive principle just to promote the quickest equipment return or to merely check the box of when the return achieved, but rather to advance the broader efficiency of the ocean transportation system. So, Your Honor, it said that in its brief. So, the incentive principle says, the interpretive rule, rather, says every case needs to be decided on its facts. They're fact-specific case, case by case. On these facts. Cease and desist was overturned for that very reason. That we're not going to suggest that just because a port is closed that everybody gets that credit, so to speak, just because of that. You do have to show that you attempted to pick up on time and attempted to return on time with respect to the chases and the shipping container. And the point I'm making is not about the cease and desist. The point I'm making is the facts in this case show that the port was conducting normal vessel operations. The facts show that there wasn't congestion because the port of Savannah was reporting precipitous drop in volumes. What does that mean, normal vessel operations when the gates are closed? What it means, Your Honor, is that even though the gate is closed, it's not accepting any new containers to come in because the gates are closed to truckers. But the port is continuing to work, load and unload those containers, put them on ships. Why is that relevant if the trucker can't get in? The port gates will be closed and they had advance notice of that. That's right. But, again, it's relevant in this case because you start from the point that everybody now agrees that TCW was incentivized to get it there before the closure. There's no dispute about that anymore. In other words, get it there on the Friday before it closed. What the FMC is saying is it wouldn't have mattered. It wouldn't have mattered because there's so much congestion. We're worried about congestion. And what the facts in the record show is had they gotten the container there before the gates closed on the Friday, there's no concern at all about congestion in the record. And the reason for that is because it was a time during COVID where the port of Savannah and the factual record states this had a huge drop in demand. So, really what we're saying is the only reason. You're saying about getting to the gate before it closes to return the container, correct? Yes, Your Honor. Okay. Which they couldn't do because of the previous colloquy we had, right, about Yamaha being closed. And, again, Your Honor, if our position, Evergreen's position is that TCW did not meet its burden of proof. It didn't meet its burden of proof to say that it could not have done that. And the reason for that is because it said all it did was take all efforts. And it didn't say a single thing that it actually did. Yamaha assigned them a pickup time. That's right. But Yamaha assigned them a pickup time. They sent TCW an email on May 21st that said you can come and pick your container up on May 23rd. Which they did. Which they did. Did TCW call Yamaha and say my free time has already expired? I'm incurring charges now. I need to pick that up earlier because I know that the court. Because the best efforts allegation before it was never rebutted. Never questioned. You never sought to do anything about it. So we have to assume that they made best efforts. Maybe they said to Yamaha can't you do better? Maybe they called them a third time earlier on. We don't know. But they made best efforts. Your Honor, if this court believes that TCW did enough. And certainly Evergreen doesn't believe that's the case. But if TCW. Is it a preponderance standard? It's a substantial evidence standard, Your Honor. As to that evidentiary piece. It is under the FMC's rules. It is a preponderance of the evidence standard. The important part for this case. Is that this is the second time that the FMC has to interpret its own interpretive rule. What it's done is done two things in one rule. The first is what it called its broad incentive analysis. And I'll come back to that in one second if I can. What we've been talking about and whether TCW did enough. Or whether the evidence showed. That's its specific. If the court believes that TCW did enough. And there wasn't anything that we could incentivize TCW to return it sooner.  But we have to come back then to the broad incentive analysis. Because under the way that the commission issued its decision. It's issued another bright line rule that says. We don't care whether or not there's a financial incentive to return. Now we're going to look at some amorphous and undefined concept of freight fluidity. It eviscerates the entire interpretive rule. So it's really important still for both Evergreen and the ocean carrier industry. That the commission take a hard look at whether or not the commission did what it said it would do. Analyze everything on a case by case fact specific basis in the interpretive rule. Because all they did was rely on hypotheticals. They ignored all the facts. And all the facts. Do you disagree with the agency's determination that your client suffered no additional costs because of the delay? We don't. This isn't an issue of costs for my client, your honor. This is a policy issue. You don't disagree with that? That Evergreen did not. That was one of the determinations that the agency made. One, they couldn't get it there because of a problem with the pickup. And two, in addition, there were no costs incurred by you. And that was a matter of some consideration for them. And they made that determination. And you're not disputing that. Your honor, the costs that are involved here are the costs of the disputed days of free time. So it's $510, which obviously is not a large amount. But those are the costs that are involved in the case. But the potential impacts of the FMC's decision on costs on these types of charges moving forward are quite enormous. Hasn't that been truncated by legislation now? Has it been truncated? It has not, your honor, no. The stakes have not been changed by legislation? Well, the stakes were high to begin with. And I don't believe, if you're referring to OSER 22, which amended the Shipping Act, the stakes are still the same. They're still quite high. OSER 22 didn't change any of these issues. What are you considering the precedential effect? Because, again, the cease and desist order was reversed. So that left in place essentially a case-by-case, fact-intensive inquiry. And the precedent that's being set is the commission did the exact opposite. The precedent that's being set here is the commission said, we understand the facts in this case are that there's a financial incentive. And we understand that the rule says that we're going to evaluate reasonableness. And we understand that the port was closed and that they understand that TCW did all they could. So that's their case-by-case determination. The precedent that's being set here is that any time now that there is a financial incentive, the commission can just say, we don't care about that anymore. We're just going to worry more about freight fluid. That's not the way it comes across in the record. It looks like a case in which the person who is being charged with owing some money says, I couldn't get the equipment in time to be able to make it back in time. And we all had noticed in advance that the place was closed. So even if I had gotten it there, it couldn't have been received. And there was no financial loss on your side. That's a very limited, if I were a lawyer in the future, that's a very limited set of findings. That's it. That's all this case says. And your Honor. The case would change if there was some financial losses. The case would change if the attorney on the other side showed they're fabricating when they say they couldn't have picked it up because they could have picked it up so they'd lose in that case. Or the case would change if they showed, in fact, the place was not closed. It was open and business was happening. It's a very limited holding. Your Honor, that's true. But on the other hand, a limited holding with very potential significant precedent being set. For example, how could, under the substantial evidence, a trier of facts say that we understand exactly what TCW did in order to retrieve the container when TCW didn't say they did anything at all? But in the next case, perhaps Evergreen or Yamaha or whoever else is participating would have some information to rebut. I think what we're saying here is this is what this judge saw in this particular case and limited this decision to here. In the next case, perhaps there will be some rebuttal evidence about someone's efforts. Well, Your Honor, two things on that. Number one, if Evergreen had an opportunity to rebut the case even now, we wouldn't have any information to be able to rebut with because it's not our information. Because we didn't do any discovery to get information about specifically when a container, the agreement went into place, when there was the decided time upon pickup, how was the free time utilized, et cetera. Your Honor, the Federal Maritime Commission constantly blames Evergreen for the glaring factual deficiencies. TCW had the burden of proof, not Evergreen. TCW had the burden of proof that a fact was more likely to have occurred than not. How could they possibly have met that burden of proof by saying we did everything they could but not saying a single thing that they did? It wasn't Evergreen's burden of proof, and it isn't Evergreen's job. It's the commission's job to tie facts and make a rational basis between the facts and the decision. Without the facts, the commission couldn't do it. So understanding that – The problem for you is you're omitting your omission. And they say – you're suggesting that it's not substantial evidence for them to come in and say we knew we had to pick up by X date. We weren't able to do it. We were not able to do that. They were not available, and we did everything that we could. That's what they put on the record. So you're saying that can't be substantial evidence. It could be. And if it is, then you've got a problem because you didn't try and rebut it. It's easily rebutted if they're fabricating. You put their person in deposition, and you ask the right questions. And if they're fabricating, they're playing games, you ought to be able to break that down. You're a good attorney. You'd break that down in a couple of minutes, right? If they're fabricating, it's not even going to be a challenge. Your Honor, I understand the questions. I would leave you with this. Let's say, again, TCW was the one that had the burden of proof. So now it seems as though we're blaming Evergreen for not engaging in further discovery. No, it's not a matter of blame, counsel. It wasn't. It's whether what they offered was substantial evidence. What we're suggesting is that it can be seen as substantial evidence. Yes, if you're looking at substantial evidence going to work against you, yes, you have an obligation to stand up and say, wait, I have to take some deposition here because this is all made up, and I can't leave the record like that. So if we get back to the Court of Appeals, I'm going to be able to say this is all fabrication. Your Honor, I would try to leave you with this. I know I'm well over time. I would just say, let's say that I had a brief that was due to this court at 1159, and I called the clerk and I said, I did everything that I could to file, but I'm late. Would the clerk just take that at face value? Would the clerk's first question be, well, what did you do? What was the problem? That should have been the FMC's first question. That should have been the FMC's first question because particularly because Evergreen said over and over again in his pleadings that TCW didn't meet its burden of proof. I understand that Evergreen could have done additional discovery, but that doesn't absolve TCW from its initial burden of proof, and it doesn't absolve the FMC from knowing the facts. How does the pandemic relate into this? The pandemic is related in the fact that the port was closed during that weekend because volumes were down. So it doesn't actually, and it relates. Does that not make it a unique situation? It is a unique situation, but, I mean, a port closure could be. Fact specific then to this case? Except that the FMC didn't apply those facts to this case. The FMC just said we're concerned about congestion. Actually, that's the opposite, right? There wouldn't be congestion because COVID said that the volumes were way down. So the FMC ignored those facts. It just made an assumption. Or took into account that the ports just need to be closed. That the ports need to be closed? Yeah, during that time. But they weren't, Your Honor. I guess the important part is the facts in the case show that the port was open. It was moving containers. And the FMC said we don't want you, TCW, to return this container. Even though under our rule, under our incentive principle, it financially incentivized you to do it, we still don't want you to do it because we're worried about congestion, even though there wasn't any congestion. And we're worried about the fact that people aren't working at the port. But they were working at the port. The FMC just ignored both of those facts. So even if this court believes that TCW did enough, the FMC's broad analysis in its rule is what the industry is very – that's the precedent that we're concerned about. Because what that says is the FMC can ignore the facts, which is completely contrary to what it said it would do in the interpretive rule, and just make up freight fluidity arguments to reach whatever conclusion they want. So there's two issues going on. We'll give you some time on rebuttal. Thank you both. Thank you. Okay. Thank you.  Good morning. I'm Chris Huey with the Federal Maritime Commission for the Respondents. I'd like to jump right in and address several of the discussions that are happening with Evergreen. So where Evergreen says that the commission needed to do more fact-finding and needed to ask more questions, I just want to point out that this is an adjudicatory proceedings, quasi-judicial proceeding, and the obligation is on the litigants before the agency to bring forward evidence, not to sit back and expect the agency to do their work. Yeah, but the parties have burdens of proof. Their argument – come on, be fair to them. This wasn't their argument. This wasn't their burden of proof. If the claim is being made, we couldn't get the equipment. That's a very viable argument in TCW's hands if they have it to make. And what they're saying is, yeah, we heard them say that, but didn't say anything to show that they did everything that they could to get it. They offered no proof other than to say we did the best we could. Now, you know, in all the cases I've seen where substantial evidence is an issue, that may or may not pass. Now, we're beating up on the other side for saying, you know, it doesn't matter. An attorney will always break that down because you don't want to have that standing there unchallenged. But the other side of that, if it's standing there and nothing else is said and the agency merely says there's substantial evidence because they said they did the best they could, what does that mean? No, thank you for asking that, Judge Edwards. In the brief before this court, the commission at page 3107 suggests that Evergreen has actually waived its ability to even contest this evidence before the court. The reason for that, and this is something that Evergreen skips over in its presentation, after the small claims officer issued an initial decision, the commission determined to review the proceeding, full commission review, and it directed briefing to happen. And in addition to what's already been mentioned, which is that in two different sets of discovery requests, Evergreen didn't ask anything about this issue. In the brief that it filed before the commission, it addressed, maybe addressed this in two sentences which didn't really constitute an argument and didn't impeach the evidence or the SCO's finding. At that point in the proceeding, the small claims officer had already waived the evidence and it's in the published decision that the small claims officer credited the statement from TCW that was sworn and the exhibit that it supplied to show that it couldn't get the container prior to the Saturday. What is the alleged uncontested evidence? That we did the best we could or we couldn't get the container or what? It really matters. Both. I think it's both, sir. So they did say that they made best efforts and that was sworn. That tells you and I, if you were being honest, if you went home tonight and talked to the family, you'd have to say, Judge Edwards is right, that doesn't really say anything. We made best efforts tells me nothing. Okay. What else do you think they said? That they could not get the container until the Saturday and they provided evidence from Yamaha showing that that was the first availability. That's the more important evidence. That's the more important evidence that you're saying is in the record. They could not get the equipment and Yamaha has confirmed that. Is that what you're saying I'll find in the record when I go back and look again? Yes, that Yamaha provided information showing for this specific container that it was available for pickup on Saturday, not on Friday, not on Thursday. It would not be available before. They said it was available for pickup on Saturday and TCW understood that to mean that that was the first availability. Okay. Getting back to the waiver part of this, though, I want to note that in their briefs before this court, Evergreen has spent I think a combined total of 20 pages on this issue, whereas when they filed a brief with the commission to contest the small claims officer's findings, this was addressed in at most two sentences, and I'm not even sure that they constitute an argument. What did they say? They said this is a joint appendix, page 538, and it's starting I think is at page 531 is where that document starts. Evergreen never refers to this document, even though this is the document that brought forward Evergreen's arguments to the full commission. So joint appendix, page 538, quote, one would think that claimant would have asserted some due diligence to try to get Yamaha to release the equipment sooner. No such effort was ever shown, end quote. I think charitably that's a skeletal presentation of the argument. I don't think it satisfies the standard of being forcefully presented. It provides no argument. It provides no citation to a case, a statute, a regulation. It's written in the passive voice, and it's actually described in that document as a fact, not as an argument. Which fact is it? I'm looking at the page. 538. I think it might be 538. Yes, sir, 538. It sounds like as you're reading it, there's even a concession there that they were aware. Yeah, the preceding sentence, claimant essentially admits that the reason for the failure to return the equipment was that it was stuck in the Yamaha facility. So it's the carryover, sorry, from 537 to 538. So it's fact number one as they describe it. So they're acknowledging that they knew that the claim was being made that the equipment was stuck at Yamaha. Yes, that's how I would read that, sir. And, you know, again, there's no argument presented there. There's no counter facts. There's no statement even that they didn't meet a burden. There's no explanation of what the burden was. So that is the full extent of how they brought this issue before the full commission, in spite of them knowing full well that the small claims officer had made the finding that she did on this issue. I wanted to address also, Judge Ginsburg, you had asked whether the statute had changed in a way that might affect this. Yeah. So the ocean shipping rule that you issued. So the one I was going to address is that the Ocean Shipping Reform Act of 46 U.S. Code 41310 changed the burden of proof in demergent detention cases. And this is not retroactive, so I'm not suggesting that. But going forward for 2022, carriers have to bear the burden of establishing the reasonableness of detention charges. And is there direct billing now to the BCO? You're referring to the rulemaking where the agency tried to determine. So that's back before the agency on remand. From this court, yes. Correct. So when that rule came out, that would have applied. If it applied to these facts, Evergreen would not have been able to bill Evergreen, but instead Yamaha directly. But that part of the rule is on remand now, so that's not operative. And so I think they could bill Evergreen again.  So, Judge Edwards, you had asked about loss, whether Evergreen had incurred a loss here, and I wanted to address that. So the two justifications for detention charges, as explained in the rulemaking, are, one, a penalty purpose to incentivize behavior, in other words, to bring the containers back. But the second is as compensation for any costs or losses that the carrier might have incurred due to getting the equipment back late. Evergreen chose in this litigation not to submit any evidence of that. It's plain as day in the rulemaking. It's stated numerous times that if a carrier is incurring costs or losses because of a late return, it can argue that. It can submit evidence. It can say we need all or a portion of these fees to compensate us for the losses that we're incurring, which might be equipment rental. It might be opportunity costs. There's a variety of things it could be. Evergreen chose not to submit any evidence on that. It's discussed in the commission's order on remand. It's mentioned in our brief, and they don't say anything about it. What do you contend is the precedential effect of the opinion in response to what Evergreen said? I think it is very fact-specific. And I think what you were describing, Judge Childs, is describing maybe not quite a unique scenario, but a specific set of facts that happened. The agency, I think, correctly took on its adjudicatory function there to look at those facts and say this was not reasonable under the statute. It was not reasonable to charge TCW for these specific three days of detention. And, you know, TCW didn't challenge the other days, and the commission didn't say that it would be unreasonable to charge on the other days, only on the closure days. So, you know, will there be a precedential effect of that in future agency adjudications? You know, I would assume so, and I also assume that one would try to distinguish it on the facts. And then there's also the factor that I mentioned, the burden of proof having now shifted to the carrier, so that will play into it in a way that I don't know if we know yet what that's going to look like. But I do view it as a very fact-specific decision. And what about response to this new test between freight fluidity and... So Evergreen sort of presents this as if the commission simply made this up. This is an exercise of agency expertise developed over more than a decade of reviewing the issues that have arisen in the industry about demerge and detention fees. The commission's analysis cites back to its rulemaking, which is a very long document, and discusses at length the efforts that the agency made to understand and develop an approach to these issues. So it's not drawn out of thin air in any respect. And the parts of that discussion that refer to needing to have incentives on both sides, so in other words, to incentivize not only the entity that is trying to return the equipment, but also to incentivize innovation, maybe different commercial behavior by the entities such as Evergreen that are receiving the equipment, that's in the rulemaking. This needs to be a system where both sides are incentivized to lead to the best possible and most efficient outcome with respect to equipment usage and return. It's not made up at all. It's an elaboration of the agency's findings in its rulemaking, which is what the agency was tasked with doing on remand from the court, and the agency fulfilled that obligation. So the agency says, well, here are the five points that were advanced by Evergreen. And we don't think either individually or even collectively that they overweigh the countervailing consideration of freight fluidity. And then the commission recites them and gives something of a reason for distinguishing it. Some are pretty good reasons, like, oh, this is in the contract. Well, the contract is subject to the standards of the shipping act. But others just simply say, yes, it's a good point, but it's overweighed by the countervailing consideration. And there's a series of those. I think three out of the five say, yeah, it's a pretty good point, or it's a reasonable point, but nonetheless insufficient. How do we evaluate whether that's a valid conclusion? So I want to start by answering that by pointing out, contextually, the arguments that the agency was responding to in that section of the remand order are drawn from the same document that I was talking about with respect to the evidence. The arguments that Evergreen presented to the commission on these points are skeletal. For example, on the question of whether there's a dispute resolution mechanism, which is listed as one of the extenuating circumstances, the regulation goes into, you know, why. Did this come up with regard to unequal bargaining power? No, this is a different section. There's one paragraph that addresses just the existence of a dispute resolution mechanism. Okay. And that is listed in the 545.5 rulemaking as a potential factor. But the reg goes through a lot of different things that you can show on that as to why it would suggest reasonableness. All Evergreen did was say, we have a dispute resolution mechanism. Full stop at the end. It was one sentence. They didn't explain why their dispute resolution mechanism tends towards reasonableness. They didn't say, you know, why it meets the criteria that are laid out in the reg. They literally just said, we have one. And that's at Joint Appendix page 541. The other arguments that it made are similar to this. They're along the lines of, there was free time. Therefore, this is reasonable. There was a contract. Therefore, this is reasonable. They put them forward as factors with no elaboration and no argument as to why they would address reasonableness. Now, I think the commission tried to address these and gave Evergreen some credit for having raised them. But that's the starting point for what we're looking at here. They're skeletal and not really vigorously presented. They are clearly vigorously presented now before this court. I don't think that's what the commission said when it rejected them. No. The commission, I think, in the spirit of the small claims process that this is under, it credited these arguments. But I just want to make sure that I'm clear that when the court looks at how the agency characterized whatever Green said and how it responded to that, that it's starting from the basis of a very, very basic, unelaborated set of arguments. The agency didn't say we're not going to consider these because you didn't elaborate on them. It did consider them, and I think it considered them reasonably. I think that the conclusion that it drew is discernible. If I could refer to an opinion from this court that just came out last week in an aviation case, I think my understanding of the court's decision was that you don't necessarily have to explicitly assign percentages or something like that to do a balancing test as long as the agency's reasoning is discernible. And in this case, I'm suggesting that the agency's reasoning is discernible because it went through these factors, said why they either didn't apply or didn't surmount the unreasonableness that had already been found about these particular charges. A bit frustrating. I'm sorry? A bit frustrating. You see, simply, well, you know, that's a fair point, but one time after another, but it doesn't amount to enough to rebut the overcome the counter. You are basically asking for the court to say, well, that's the commission's unreviewable decision. Or maybe the product of agency expertise having looks at, I mean, the reality of several of these arguments is that they're basically abbreviated versions of arguments that were raised during the rulemaking proceeding where the agency addressed, you know, very substantially similar arguments, which are often more elaborated on than is the case here. These are pretty fact-specific. All right. First, respondent contends that 21 days of free time should have provided sufficient time for unlawful up. And you say that's up for a loan is not to spot. Respondent also argues the claimant agreed to the contractual terms. All right. Well, that's, I think your point on that is actually inclusive. Dispute resolution. Fair enough. Respondent further contends the court's closure was scheduled and known in advance. So, well, that's not disputed. Advanced and well-published is no support. Closures can weigh in favor of the reasonableness of assessing detention charges. However, this consideration is not dispositive. It just goes on like that. Not helpful. Not very helpful. I think in reading that in totality, the agency refers back to the larger finding of unreasonableness on the facts of this case, wherein TCW simply couldn't return the container before the closure period began. And none of these extenuating circumstances suggest otherwise. So, yes, there was free time. And I want to point out as well that all or nearly all of these are simply characteristics of any shipping transaction. There's always free time. There's always a contract. There's always a dispute resolution mechanism. That's actually required now by 46 CFR Part 541. The only one that doesn't fall into that is advanced notice of closure. The rest of them are simply routine facts of any shipping transaction. But, nonetheless, the agency addressed them and tried to weigh them again. Evergreen itself offered no argument about how these weigh into a reasonableness analysis by the agency. And it's briefed before the commission. So, the commission is trying. Actually, it would have been a helpful addition to say these are standard and will appear in every case, which I don't think the commission did say. See, counsel, what my colleague is saying, I mean, there's a lot of stuff here that's really extraneous, given the test that's being applied and the facts of the case. There are really three things, as far as I can tell, that ended. They couldn't get the equipment, credited evidence. That's your argument. They couldn't get it to be able to deliver it on time. The place was admittedly closed on the three days for which they're being charged. No dispute on that. And there were no costs that resulted to the charging party. And that's it. Why do you have to say anything? What's the end of it? It's perfectly reasonable for the agency to say, in those circumstances, if those are the factors that show up, that's the end of the discussion. They couldn't get the equipment. And the place was closed for the three days that we're talking about, and there were no costs that resulted. Is there anything more that I'm missing? You don't need anything more than that, do you? I'm not blaming you for how it's written, but you don't need anything more than that, right? Well, I mean, I certainly agree with that analysis and fully endorse it, but the agency was tasked in the Evergreen one decision. I'm not blaming you. I'm just saying we're talking now. Okay. Now that you look at the case and we think about it, because we have to try to pull it all together. Is there anything more that I have to worry myself about? Because right now, those three things seem dispositive to me. I mean, I certainly agree, Your Honor, that the incentivized conduct couldn't happen because they couldn't get the container until the port was closed. Yes. Okay. Enough? No. Thank you. Thank you. Two minutes. Thank you, Your Honor. Just a couple of points. Number one, the agency has asked for deference to its expertise. Again, we'd point out that the agency was simply wrong about all the hypotheticals in its freight fluidity analysis, so it's not deserving of any deference there. Agency's counsel also mentioned briefing before the commission. It's really important to recognize these are two very distinct cases. Evergreen one was about whether the port closure, not the plant closure. That's what Evergreen one was about. Evergreen one was with knowledge of the port closure because it was scheduled in advance. Was there a financial incentive to TCW to return the container on time? That's what that whole briefing was about. The commission opted not to do additional briefing on the plant closure issue. On the plant closure issue, Your Honor, I want to point out one thing that really kind of shows the inconsistencies in the FMC's order for Your Honor's consideration. On page 14 of the order, the commission says Evergreen's charges after free time expired on days the port were open were reasonable, but charges on days the port were closed were not. But this directly contradicts what the FMC's analysis is on pages 12 and 13 of the order, where it says the only thing that mattered was that the plant was closed, preventing TCW from retrieving the container at all. So under the analysis on page 14 of the order, even though the plant was allegedly closed and the FMC is saying they couldn't get it, Evergreen's charges on Wednesday, Thursday, and Friday before the port closure were apparently reasonable. It says so right in the FMC's order, JA 765. But the FMC doesn't explain how the same charge suddenly becomes unreasonable on Saturday, May 23, just because the port is closed. This internal inconsistency, and this is the FMC's focus on the plant closure and why it didn't get the facts. This internal inconsistency demonstrates that the FMC is really just reverting to its no charges on closed days rule, which this court has already rejected in Evergreen 1 as arbitrary and capricious. It has no answer to that inconsistency, which Evergreen raised in its brief. On the contracts, the FMC, again, consistent with the rest of the order, Judge Ginsburg, ignores the facts and relies on even more assumptions in finding that the contract negotiations between Evergreen and TCW were somehow unfair. The FMC starts with a blanket assumption that says that motor carriers in all cases lack bargaining power with ocean carriers. And then it points to general language in the interpretive rule that says that the FMC is going to closely scrutinize these types of contracts. But the court already criticized the FMC in Evergreen 1 by saying you can't just simply recite general arguments made in the interpretive rule. You have to analyze the specific facts of each case. So what are the specific facts in this case show? One, that the order doesn't scrutinize these contracts at all. So the FMC didn't undertake that analysis. Number two, even though the FMC in its brief tried a post hoc rationalization to suggest that it did, but it didn't. Number two, in its own words, TCW is one of the largest truckers in the southeast and has intimate knowledge of these transportation contracts. And probably the most important, number three, TCW never argued that the contract negotiations were unfair or unequal. This is not in the record. The FMC, again, like the rest of the order, just made an assumption and ran with it. To conclude, Your Honor, under the Shipping Act and the FMC's interpretive rule, reasonableness depends on the facts and must be decided on a case-by-case basis. And under the APA, the FMC is required to consider all the facts and make a rational connection between those facts. The FMC has for a second time failed to conduct a proper reasonableness analysis and didn't conduct any further fact finding. And instead, it made up a new test that's contradicted by its own hypotheticals, the record, and it's based on unsubstantiated claims. And so without those necessary facts, the FMC could not and did not engage in reasoned decision making. And so we ask this Court to vacate the commission's order on remit. Thank you very much. Thank you. The case is submitted.
judges: Childs; Edwards; Ginsburg